in Otero v. Kane, No. 24-2907. Counsel, take a moment to get yourselves situated. And whenever you're ready, Mr. Sugrivian, may proceed. Before we begin, with the Court's permission, I would like to reserve three minutes for rebuttal. Granted. How do you pronounce your last name? It's Zerbrighen, Judge Davis. Second syllable. Okay.  Great. Go ahead. May it please the Court. My name is Adam Zerbrighen from the City of Philadelphia Law Department. I represent the appellant's officers, Christian Kane and Alexander Hernandez. The question of law presented by this case is the level of culpability that is required to shock the conscience for purposes of a 14th Amendment substantive due process claim where a police officer makes the decision to pursue a fleeing suspect. In this case, you have a Philadelphia PD directive to its officers that says that you can pursue when it's necessary to effect the arrest or prevent escape and, and it's all caps, and the officer has probable cause to believe that there has been a forcible felony or the probable cause to believe that the person has a deadly weapon. If not, in all other circumstances, initiating a vehicular pursuit is strictly prohibited. The officers here saw no gun and it wasn't a forcible felony. It was a person handing out what appeared to be drugs on a street corner. Your Honor, why would the officers have violated that directive? Your Honor, there's no question that all of that is correct, that the officers did violate the directive. They violated that directive in order to pursue a suspect that they observed commit a narcotics violation or that they suspected of committing a narcotics violation, so there's no dispute in this case that they did violate that directive and, indeed, they were disciplined for violating the directive. The question in this case, though, is not whether their conduct violated the directive but whether that conduct violated the substantive due process clause of the Constitution. And there's no question that the city of Philadelphia goes beyond what the Constitution requires and that's, that's a good thing. You know, municipalities shouldn't be content with meeting the bare minimum of what the Constitution requires. They should implement best practices. And here they've done that with Directive 9.4. But the question in this case is whether they can be liable for violating the substantive due process clause simply by violating that directive and pursuing a suspect that fled. And this, in this case, the answer is straightforward because it's dictated by the holding of a Supreme Court Lewis versus, County of Sacramento versus Lewis, in which the Supreme Court held that in high-speed chases that are aimed at apprehending a suspect and only in intent to harm that is not justified by a legitimate object of arrest rises to the level of culpability that shocks the conscience. Let me ask you a question about Lewis. So as I understand what you're telling me, well, I understand what you just said, but let me ask you a question. So in Lewis, the court gave the analogy of a prison riot. Why shouldn't we understand that to mean that when courts are deciding what standard to apply, we have to consider whether and to what extent the officer was responding to an emergency? Your Honor, for purposes of Lewis, Lewis did not require that there be an emergency. Indeed, there was no emergency at issue in Lewis. There was simply a suspect on a motorcycle that fled when the officers tried to stop that individual. Now, in Lewis... Does it matter? Was an emergency created by the 100 miles per hour flight? It was certainly dangerous driving, Your Honor, but I don't know that it means an emergency within what this court held in Sowers. And this court was talking about either there being an emergency, so some situation in which that required a pursuit for life and death purposes. But also there's a separate statement in Sowers that, well, when we're talking about pursuits of fleeing suspects, we're within the territory of the longstanding principle in Lewis. So just a moment ago when you talked about Lewis and you articulated Lewis, you mentioned high speed. Is it your position that all flight triggers intent to harm or does it have to be high speed? Yes, Your Honor. All flight triggers intent to harm, and that's what the court held squarely in Lewis. Isn't there a complement to that, and that's Judge Jordan's decision in Sowers, which says that you basically look at the time to deliberate and the justification. And if the time to deliberate is hyper-pressurized, in other words, it's like, boom, got to decide right now, then you have to have, following Lewis, an intent to cause harm unrelated to the crime. Second is there's a middle ground called hurried deliberation. You've got a little bit of time to think, and then it has to be a conscious disregard of a great risk. That's the culpability standard. And then finally, if it's unhurried, then it's just deliberate indifference. Which one is this? Your Honor, there's no need to apply that three-part test in this case at all. Because what Judge Jordan wrote in Sowers was that most high-speed cases are going to either involve emergencies or they're going to involve the flight of a fleeing suspect and a pursuit of a fleeing suspect. In those instances, we recognize as a longstanding principle from the Supreme Court in Lewis, the intent to harm standard is going to govern. But in a different situation, in a situation that falls outside of Lewis. So like Sowers, the situation was you had an officer who noticed the suspect commit a traffic violation. That suspect was not fleeing. That officer radioed ahead, made a U-turn, and drove at a very high speed, over 100 miles per hour, just to catch up to that traffic offender who wasn't fleeing. In that situation, what Judge Jordan recognized and this Court recognized was that that situation didn't fall within Lewis. That's a different situation altogether. Well, is it a factual determination that needs to be made as to whether something is hyper-pressurized environment versus a hurried deliberation? No, Your Honor, because here the undisputed facts are that this is a flight of a fleeing suspect. That Mr. Ellison was fleeing. So as a matter of law. He was fleeing. They're on Clearfield and they're following him to the next stop sign or whatever stop light. And only after they attempted to have him pulled over did he take off. And it was never a 100 mile per hour chase. It was at most 52 to 55 miles an hour. So he turns on the side street and then he comes down East Allegheny. But the officers knew from 2008 that they were not to follow this type of person because it wasn't with a gun and it wasn't a forcible felony. So they were trained on that. So why would this be a hyper-pressurized environment? It is a an environment that is a split second decision making as a matter of law under the Lewis case. So to address first, Your Honor, the the police directive.  The police directive established that it was against police policy to pursue in this situation. No question. But the issue is, would an officer know that for purposes of the qualified immunity analysis that that pursuing a fleeing suspect could lead to liability for a substantive due process violation? And the answer to that is no, because Lewis establishes that when you're pursuing a fleeing suspect, there is no liability absent intent to harm unrelated to the legitimate object of arrest. Is your position that Sowers is inconsistent with Lewis? Not at all, Your Honor. Sowers says, look, Lewis dealt with a situation in which there was a fleeing suspect, a situation which there was an emergency. Those situations are governed by that longstanding principle. But now we're confronted with a situation that doesn't fall within Lewis. It's a different situation in which, again, we have a minor traffic offender who's not even fleeing and we have an officer who's driving recklessly to catch up. And in that situation, Lewis doesn't govern it. So we have to apply our three-part framework that Judge Ambrose was discussing with regards to other state-created danger claims. So Sowers only applies if you don't have flight or an emergency? Absolutely, Your Honor. And Sowers makes that clear, that those situations fall within the longstanding principle of  So if you have a minor traffic violation and a suspect, minor traffic violation, police officers turn the light on, the suspect drives away at 15 miles below the speed limit. We're in Lewis. Yes, Your Honor. I'm assuming in that situation that the officers have their lights on, it is clear that the individual is intending to flee, is fleeing. And in that situation, it falls within Lewis. The difference in Sowers was that that individual committed the traffic violation, was going down the road, certainly driving away from the officer, but there was no indication of flight. But you don't need both. You don't need flight and emergency. Either one is enough. Either one, Your Honor. And the court made that clear in Lewis, that most situations are going to involve one or the other. And when you look at cases from the... Isn't it both? That you have to look at the time to liberate and the justification? I think you look at those, Your Honor, if you're outside of the territory of Lewis. So if you're not dealing with an emergency and you're not dealing with a fleeing suspect, what Sowers says is... But your brief doesn't argue that the district court erred while applying the three-part test we just talked about. It erred in applying that test at all, Your Honor. And that's what we argued, is that the district court erred by not applying the straightforward holding of Lewis. Instead, what it held that even... You argued that, as I recall, you didn't argue that the court erred by applying the three... the tripartite test, only that it shouldn't have applied the framework in the first place. Correct, Your Honor. It shouldn't apply the framework in the first place because there's a clear holding from  And Sowers that talks about this test says, we recognize most cases are going to fall within that holding. And we don't have to measure what the justification is, what the time to deliberate was. Those cases are going to fall within Lewis, and they're going to be governed by an intent to harm standard. Can you point me to what in Lewis... What in Sowers, I'm sorry, breaks up flight and split-second decisions separately? I'm looking at page 723, and it's talking about the intent to harm standard applies when officers make split-second decisions to pursue fleeing suspects. Why should we look at that as a two-part or test instead of requiring both? I think directly the language that you quoted, Judge Montgomery, is that we recognize that most high-speed police pursuits arise when officers are responding to emergencies or when they make split-second decisions to pursue fleeing suspects. Our holding today does nothing to alter the long-standing principle that in such cases, in those cases, constitutional liability cannot exist absent an intent to harm. So the boundary between Category 1 and Category 2 is a little fuzzy because Category 2, you make decisions. But then we have reference to split-second. Here, if we take, if we, we could say they don't speed up until, you know, it was like 38 seconds of speedy chase here, or we could say they had to make a split-second decision about whether to speed up. But if we take it as 38 seconds, it's in between hours and minutes and split-second. Which way should we define that category? I think what Lewis holds, Your Honor, is that we don't have to make that parsing. And that's, I think it's telling that the Lewis decision and then the Davis decision that applied Lewis doesn't parse that, you know, we're talking about 38 seconds or we're talking about a minute. It simply says that in the case of a flight from a law enforcement officer who's trying to stop, we apply an intent to harm. Because those cases are, by their very nature, hurried, you know, split-second type decisions. And also, that we're weighing these competing obligations, the obligation on the one hand to be safe and not endanger the public, but on the other hand to show that there's no way to freedom by flight, and that's what the Supreme Court said. In 38 seconds, the driver of the car and his partner could have time to say, wait a minute, we've got to figure out here what to do, because, you know, we've got a directive that says don't pursue unless it's forcible or he has a gun, forcible felony or he has a gun. So what do we do? And they just decide to follow full speed for what that traffic allowed. So the question is, doesn't Sowers contemplate that a fleeing suspect might or might not create a dangerous situation, or does it assume that all fleeing suspects create danger? I don't think it assumes that all suspects create a danger, but what it does assume is it assumes that what Lewis held was that an officer is not required by the Constitution anyway to make a decision to give up the chase. And that's what Lewis talked about, is officers are being pulled by two obligations. They're being pulled by safety, and then on the other hand, to show that flight is no way to freedom. You're out of time, but I do want to ask you, let's assume we disagree with you about the three categories do apply, and let's further assume that we treat this as a middle category case. Is there the recklessness, the conscious disregard of a risk here or not on the facts as the district court found them? The district court concluded that that created a genuine issue of fact based on the directive. What do you say? Do you agree? We don't agree with that. We don't agree that there was recklessness, but we also recognize that the issue is limited by the appeal here being a qualified immunity appeal and being one where we have to accept the district court's conclusions about the factual record. We could accept the factual record, but are you conceding that the facts as found amount to recklessness or conscious disregard? I wouldn't, Your Honor. I wouldn't. And I believe we've argued that there's no indication of recklessness here. But I also think that, again, our position is that that is below the level of intent that's required under Lewis. Okay. Thank you. We'll have you back on rebuttal. Good morning, Your Honors. My name is Andra Leidacker. On behalf of the plaintiff, Joshua Otero, with me at Counsel Sable is Mr. Charles Becker, also representing Mr. Otero. May it please the court. Your Honors, the issue before the court is whether under the facts of this case, one, did the plaintiff state a claim for a violation of the due process clause of the 14th Amendment, and second, whether the rights that we have identified under the facts of this case are clearly established that right under both the Lewis case and also the Sowers case. I would like to pick up with something that my assistant... Does the fact that we're even here having this argument in your print as authority on the other side mean that at least there's qualified immunity, because it's not so clear? I'm sorry, would you mind repeating the question? Isn't there qualified immunity in this case? Is there a clearly established law? Yes, Your Honor. There is no qualified immunity in this case. First, Lewis established a right. It discussed the right very clearly in relation to the 14th Amendment. What the court said there is that it recognized that there was a deprivation of the right to life under the circumstances described, which had to do with a high-speed chase. It had to do with an emergency. And then Lewis talked about an abuse of the executive power so clearly unjustified by any legitimate objective of law enforcement as to be barred by the 14th Amendment. And in addition to Lewis, we move on to Sowers, which recognized the same right as described by the U.S. Supreme Court under the facts of this case. What about Davis? Does Davis suggest that flight alone is enough to trigger intent to harm? In Davis, the plaintiff conceded the intent to harm was the applicable standard. What the plaintiff did in Davis was try to factually distinguish Davis from Lewis. I guess what I'm trying to figure out is what do we do with the language where the court says nothing in Lewis suggests that courts are free to second-guess a police officer's decision to initiate pursuit of a suspect. So long as the officers were acting in the service of a legitimate governmental objective here to apprehend one fleeing from police officers' legitimate investigation of suspicious behavior? Your Honor, I completely agree that police officers have a lot of leeway and discretion generally. That, of course, is not the framework within which the police officers here were operating. The reason why Sowers applies here and why it's very important to actually focus on the deliberation that normally attended, that attended, for example, in Lewis, where the policy of the state of Sacramento actually was described in Lewis. And the policy of the police department in that case was to provide a lot of discretion to the officer in when to initiate pursuit. Has the Third Circuit ever used the violation of a police directive or regulation to help determine the level of culpability? Can you point to any case that's done that? No, and that's not actually what we're arguing, Your Honor. Okay, but that would seem to be relevant to qualified immunity, that you can't, qualified immunity would say you can't use the violation of the reg to show this is clearly established. So we're not pointing out, we're not pointing to the violation of the regulation. What we're pointing to in terms of the regulation is that the regulation already told the officers what it was to do their job under those circumstances. It took the entire deliberation back years. No, that deliberation doesn't mean the fact that people back at the headquarters were doing something. The deliberation is about what the officers are thinking about there. And part of what they should have been thinking about is what the directive- Should have been thinking about. Right. Okay. But these are conscious, subjective standards. They are conscious, subjective standards, of course. But what we have is a police vehicle arriving at a scene where there was, the call was not made with any sort of priority. Both of the officers in this case, in deposition, testified that there was no emergency. Well, wait a second. Sorry. Lewis talks about dangerously, Sauer talks about, cites Lewis, and it talks about dangerously fleeing suspects. Now you're talking about emergency. I want to understand the term dangerously fleeing, which in our case, we'll focus on that rather than emergency. What does dangerously fleeing mean? And wasn't this suspect dangerously fleeing? In Lewis, what the court said- Okay. Was this suspect dangerously fleeing? Initially, when they initiated the pursuit, that suspect was not dangerously fleeing. Okay, fine. But they're also driving at a reasonable rate of speed. They don't speed up until the suspect speeds up. So at the point where the suspect is driving almost double the posted speed limit after driving the wrong way down a one-way street and is suspected of drugs, is that dangerously fleeing? Your Honor, yes. In terms of being on very narrow streets in Philadelphia and driving 30 miles over the speed limit, at that point, yes, they're both being engaged. They're doing that at the point that the accident happens. So why doesn't that mean that under Sauer's own terms, he's dangerously fleeing, intent to harm applies? Because the decision to actually follow and pursue him started much earlier. It did not start at the point where Ellison crosses the red light. The decision to pursue him started when they observed him handing out packets of, small They put on their lights, they don't put on their siren. They go on for three blocks. At a lawful, normal rate of speed, the correct way down the streets. Right. And you are now challenging that decision to follow at a lawful rate of speed with the lights on? That decision is part of the time for deliberation for when these officers have to choose whether to pursue or not. Going back to whether or not this is clearly established, are you aware of any cases within this circuit that apply anything other than the intent to harm standard when there is flight? Well, so Sauer's is... Okay. But with Sauer's, there's not flight, right? The suspect was not fleeing. Actually, Your Honor, this actually opens up the opportunity to discuss a very important distinction that the defendants were making here. When we look at Sauer's and at Lewis, the defendants are distinguishing Sauer's from Lewis and the standard of culpability on the basis that the suspect in Sauer's did not know that they were being followed. That type of distinction does not actually speak to the officer's state of mind. And it's the officer's state of mind that is actually the culpability, that is actually what this case law is looking at. So this idea of whether the person that is being pursued understands that they're being followed, that actually doesn't fit appropriately in terms of what the court looks at when determining the culpability and whether the right was clearly established at the time. So you're saying there was flight in Sauer's or there was not flight in Sauer's? What is important is whether the police officer was following and whether they were exhibiting the correct amount of culpability. You say it doesn't matter, but Sauer's seemed to say it mattered a lot. It mattered a lot in terms of the decision-making of the officer. So the Sauer's right, the way that it is explained in Sauer's, yes. So the court actually has very specific language in there about how they define the right. And they talk about the right issue here is not to be- Okay, can you tell us which page you're on of Sauer's? Yes. So I can follow along. Two at the bottom. No, can you tell me the page number in F3? The citation is 717. 717. Okay. So in a Westlaw printout, it would be on the second page. So what Sauer says is, we accordingly define the right at issue here as one not to be injured or killed as a result of a police officer's reckless pursuit of an individual suspected of a summary traffic offense when there is no pending emergency and when the suspect is not actively fleeing the police. So they define the active fleeing police as part of the right they were understanding. They did not purport to clearly establish something where a suspect is actively fleeing the police. This is what was happening here too. At first, he was not fleeing the police. When Mr. Ellison started off- Okay, but can you define it as they were doing reckless pursuit before he was actively fleeing? Is it reckless pursuit to drive at a lawful speed and turn on the lights of the car? What case clearly establishes that? Your Honor, we have a very limited number of cases on this subject, right? We have the Lewis case and we have the Sauer case. What about a consensus among the circuits? Do you have any other circuits, consensus among the circuits that suggest something other than intent to harm applies in the context where you have fleed? So, in the context where there is a sudden flight and then the officer starts immediately to pursue on the basis of simply the flight, there is a consensus that intent to harm applies. What we have here- Wait, you got the 8th and the 9th circuits interpreting Lewis as a categorical rule, which sounds like what you're agreeing with, but I thought that there were other circuits like the 7th and the 10th that took a different view, in fact, applied a deliberate and different standard in the 10th circuit. So are you telling me that you now, despite that, you agree that there is an established consensus? No, Your Honor, I agree with you. There is, the 10th circuit and the 7th circuit, they absolutely apply the entire spectrum of the shocking of the conscience within the scope of Lewis. And to the degree that we're talking about, what does it mean to have a conscience-shocking standard, I fully agree that the 3rd circuit, the 7th circuit, and the 10th circuit all apply the same framework. And I would respectfully suggest that the 8th circuit and the 9th circuit have actually done it wrong in terms of interpreting Lewis so narrowly that it effectively reads half of the opinion out of law. Because in Lewis, what the court talked about was that under the due process clause, what you're looking at is the totality of the facts. And that is exactly what the district court looked at here. The district court didn't look at a single moment in time, as the city would suggest, that you only look at the time that someone presses the gas. So you are arguing squarely that the relevant moment is when they start following him at lawful rate of speed. So that's tortious. Your Honor, I'm actually, what I'm actually arguing is that the entire, the totality of  Tell me the relevant moment at which we assess the decision making. Is it when they start following him? No, Your Honor. When do we gauge their mental state? The mental state has to be gauged on the totality of the facts. When? At that moment. What moment? On clear field when they see him or when they actually come behind him at the next stop. Going slowly and then all of a sudden he picks up. So when is it in that time frame? The entire time frame is within the scope of the decision making. So it's your position that we don't look at a particular moment. We look at the entirety of the chase, no matter what it is, and how does that work? What the U.S. Supreme Court says is that the due process violation is gauged on the totality of the circumstances. And what the police officers had to have was fair warning that what they were doing violated the Constitution. At what moment did they have fair warning that what they were doing was violating the   By when? When they started the pursuit, which includes the time. As soon as they're on clear field, as soon as they see him, as soon as they're behind him. Do I see you nodding to that? As soon as they turn, as soon as they see Mr. Ellison starting the engine and the police officer gets back to his car, gets in the car, makes a call to the office and says we're pursuing him. So it is before they're speeding, yes? Yes. And it is before they turn their lights on? Yes. Well, officers, if the chase had stopped at that point, you could sue the officers and get, assuming there was some damage, right? Assuming some damage is here. They don't have to speed. They don't have to turn on their lights. There's still, we're still going to apply this recklessness standard. There's not, they violated a clearly established right at that point. I wouldn't go that far because that is not within the, within how the, both the US Supreme Court and the Third Circuit would define the actual right. Okay. By what time could they be sued? By what point here? When they, when he puts in the call saying I'm following him or some later point? No, I didn't mean to interrupt. No, I was just going to, I was just going to go down the points as well, but you answered the question. How do the officers know this is just a routine pulling somebody to the, to a side so that, and then how do the officers know that the person is fleeing at that point in time? Isn't it only when all of a sudden he takes off on Clearfield, goes down a one-way street and then comes back on East Allegheny? Isn't that really the moment in time that you have to assess when the police officers are, must make a decision, pursue or not pursue? They had direction from the police department.  But a directive and a violation of police department protocols is not if so facto a constitutional violation. That's the point the ministers are bringing, made. So back to Judge Beavis's question, isn't, but isn't the, the, the moment in time that they have to make a decision is all of a sudden he takes off. What do we do? They don't really think they just follow. And doesn't that argue for if, whether you apply Lewis or you apply a categorical rule from Lewis as the Eighth and Ninth Circuits do, or you do something different like Sowers does. But even in that situation, isn't it hyper-pressurized to them because they have to decide instantly? It isn't when they're coming down, when they first see him, okay, here's what we're going to do. And somebody's reading the police directive and, you know, no, it's like they're not even thinking about that. They come up behind him and then all of a sudden, boom, he takes off. That is, seems to be instantaneous. That does. And if the facts were limited to that, yes, that is instantaneous. And that's in fact, isn't that when the decision point starts back to Judge Beavis's question? That's an important question. It is a very important question in a fact pattern like Lewis, where that's exactly when the suspect is entering the picture. And I want to reiterate that we are not arguing that it's the violation of the policy, of the department policy that gives rise to a constitutional violation. I just want to make that very clear. What we are arguing is that the very existence of the directive is what stretches out the time. Because what they talked about in Lewis, the U.S. Supreme Court talked about in Lewis, is that the police officer, at the moment that the motorcycle sped past him, he was torn between the idea of doing their job and following in a circumstance where a motorcycle was going fast and putting others in danger. So let me ask you, following up on Judge Beavis's question then, it sounds like you don't think the moment is the moment the, at first you said the moment is when the officer gets back to his car and they start to, and the defendant turned on his engine and they start to pursue and then you kind of backed off that. But you also didn't seem to agree with Judge Ambrose that it's the moment that the suspect turned down the wrong street. So trying to figure out when the moment is, is it the moment, what moment in between those is the moment? What I'm pushing back really on is the idea that we have to identify a moment in order to find a constitutional violation. How are judges supposed to apply your rule? It's all to tell you the circumstances, you don't have to identify a moment, just look backwards as whether someone got hurt. I'm trying to understand. Let's imagine he got permission to follow, turned on the lights, followed at a normal rate of speed, a lawful rate of speed, and the suspect gets nervous and blows through a red light and hits a pedestrian at that moment. Does your argument suggest that those officers, because they were driving lawfully but violating some police department policy, might have shocked the conscience and be liable when they never sped up or they just turned their sirens on and were trying to pull the guy over, that they could be liable for trying to do that. And then the suspect responds and blows a red light and hits a pedestrian. Of course that's not... I know it's not this case, it's a hypo. I'm trying to figure out what future judges are supposed to do in a case like that. We're trying to figure out the consequences of this decision. And Judge Ambrose, and Judge Peeves, I entirely understand that. It is, of course, that is a very difficult scenario, right? Because we do not have the police officers themselves speeding. But of course, it's very hard to understand what exactly, at that point, whether the... It creates an issue of fact. Really, that's what it is. You're telling us it's clearly established, and you can't tell us what we're supposed to tell officers to do. Do you see the contradiction? What officers are supposed to do is do their job, and their job in this circumstance was not to follow the suspect for a minor offense. But again, we just talked... That is not necessarily a constitutional violation. That's a violation of intra-police department policy. You need more, significantly more, to make a constitutional violation. That's a big thing to say that there is a substantive due process violation. And it's not typical that we apply that highest standard. What the Due Process Clause protects against is arbitrary action by government. And in that sense, all the facts that led into the decisions of the police officers are relevant. And we might simply ask, okay, are the actions of the police officer in Lewis, is that sort of the beginning and the end of what a reasonable police officer is supposed to do when they're doing their job? Or... Just by arguing reasonable police officer, you're talking negligence. My apologies. You're right. You're arguing way above negligence. Arbitrariness. Yes. And in this case, against the backdrop of all the facts, the fact that there was no emergency, the call did not come in with a priority, the fact that they had ample time to think about what they were doing here, and yet they chose to initiate this pursuit. This pursuit that after three blocks, after they had time to think about it, they ended up in a high-speed chase that killed Ms. Martinez. All right. Thank you for your argument, and let's have a rebuttal. Thank you. Your Honor, I'd like to briefly begin with the clearly established prong of the qualified immunity analysis, because I didn't get a chance to speak much about that in my opening. There's no case that the plaintiff cites here that clearly establishes, even if this court disagrees with our interpretation of Lewis. All right. We take that. Next point. We couldn't get a time at which we could look from appellee. What will appellants tell us is the time at which we should look? Judge Bevis, the time is the moment of decision. The moment of decision. The decision to start the car, the decision to call in, the decision to turn on the lights, or the decision to start driving faster or the wrong way? The decision, the last decision, the decision to speed up, because why that's important is it's the moment in which... Exceed the speed limit, exceed normal driving. Exceed normal driving and pursue a suspect who is, as that suspect is driving, will flee, will be out of view. And that is the moment that Lewis is concerned with, because that's the moment in which the officers feel the pulls of those competing obligations that Lewis is discussing. Are you saying flight didn't start until that moment, or did flight actually start before? Flight, in the sense that the individual is not complying with the demand to stop. Factually, for roughly how long are the lights on before he speeds up? It's at least several minutes, Judge Bevis, because... So there's this interesting question Judge Montgomery was alluding to, which is we normally expect someone to pull over within a minute or so, next safe possibility. So he's going on for a little while not complying, and we should not understand that as actively fleeing? It's not quite actively fleeing, Your Honor, because at that point in time, the individual is not complying, but we don't have a high speed pursuit. We don't have a suspect who is taking off, and it's clear that he is going to attempt to try and evade the officer. So that really, that last moment, is the moment... When were the lights activated? The lights were activated, Your Honor, just after Mr. Ellison pulls off, and the officers begin to... The officer goes back to his vehicle, gets back in the patrol vehicle, starts to follow, puts the lights on by that first red light. I thought... What does BWC mean? What's that word? It says in the investigation, the department investigation, Police Officer Cain did not activate his BWC until after the suspect's vehicle was involved in an auto accident at Allegheny Avenue and Frankfurt Avenue, which occurred during the vehicle pursuit. Police Officer Cain should have activated his BWC while responding to the initial radio call at Martha Street and Clearfield Street. BWC, Your Honor, refers to the body worn camera that the officer is wearing. So the body worn camera is not activated. However, we do have surveillance footage. We have the testimony of the officers. The lights were activated on the patrol vehicle at that first stoplight. I have a quick question about flight. Is the question of when flight began or did not begin a fact question? It can be, Your Honor. I believe it can be. I believe there could be a dispute of material fact as to that question, but there's not here. I think everybody agrees in this situation that at least by the time Mr. Ellison takes off, he is actively fleeing. And there's no contention to the contrary by the plaintiffs here. So we have an individual who is in active flight. And that's why this case falls squarely within the rule of Lewis. Isn't your best argument where you just started on your rebuttal, look at qualified immunity, and there was no clearly established law at the time of this particular incident? Judge Amber, I think that's right. I think that's a very simple and easy way to resolve this case is that there's simply no case that establishes clearly and beyond debate the plaintiff's interpretation of ours here. But I'd also submit to Your Honors that it's a straightforward application of Lewis and that the district courts can use the guidance at least before the district court's decision below. No case within the Third Circuit that I'm aware of had applied less than an intent to harm standard to a fleeing suspect. In these cases, as Your Honors might imagine, come up fairly routinely. But I do think that the fact that the district court erred here in applying Sowers merits this court's decision on the first prong of the qualified immunity analysis. But I would agree with Your Honor that the second prong of the qualified immunity analysis is certainly easy and straightforward. All right. We thank you both for your arguments. We'll take the matter into advisement and ask the parties to work together and prepare a transcript and split the cost.